## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AMARDEEP SINGH,** | **Civil Action No.  21-10451 (FLW)** |
| **Plaintiff,** | |
| v. | **MEMORANDUM AND ORDER** |
| **FREEHOLD POLICE DEPT., et al.,** | |
| **Defendants.** | |

Plaintiff Amardeep Singh, currently incarcerated at Monmouth County Correctional Institute, has filed a Complaint, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, and an application to proceed *in forma pauperis* ("IFP application").  As this time, the Court will grant the IFP application, ECF No. 1-2, and screen the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Federal law requires the Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff, who is a non-native English speaker, alleges that on November 6, 2019,  he was working at a gas station in Freehold Township when two white customers created a disturbance by blocking the entrance of the gas station, punching Plaintiff in the face unprovoked, and breaking into the service station.  *See* Complaint at 9; *see also* ECF No. 1-3, Statement of Fact at 3.  Plaintiff appears to acknowledge that he defended himself with a baseball bat and a knife. *See* Statement of Fact at 3-4.

Patrol Officer J. White, a Defendant in this action, was called to the scene to investigate; the two white customers claimed that Plaintiff assaulted them with a baseball bat and a knife with no provocation and also reported that Plaintiff damaged their vehicle. *Id.* They showed Officer White a cell phone video to support their claims. *Id.* According to Plaintiff, Officer White did not ask to see the surveillance video from the gas station and proceeded to arrest Plaintiff based on the cell phone video and the accusations of the two white men. *Id.* However, Plaintiff does not allege that he informed the Officer of the existence of such a video, or that it was available for the Officer to review at the time of the arrest. Based on the pleadings, as currently pled, Officer White only had the statements of the white customers, their cell phone footage, and Defendant's statement at the scene of the arrest. And, based on those information, the Officer arrested Defendant.

The next day, Officer White appeared at Freehold Township Municipal Court to establish probable cause for Plaintiff's arrest, which he based on the cell phone video and the statements of the two white customers. *See* Statement of Fact at 4-5.

When he was released from custody on November 7, 2019, Plaintiff obtained the surveillance video from his workplace. *See id.* at 3. Plaintiff brought the surveillance video to the Freehold Township Police Department and showed it to Officer White, who thoroughly reviewed it. Officer White then charged the two white customers with aggravated assault against Plaintiff, as well as breaking and entering the gas station. *See id.* at 5.

Plaintiff asserts, however, that Officer White failed to follow New Jersey Directives for interviews and crime scene procedures. *See id.* at 5. In his Complaint, he appears to assert that the pre-arrest investigation by Officer White was inadequate because he failed to obtain the video surveillance and relied on false statements and the cell phone video submitted by the two

2

customers.  Plaintiff alleges that his arrest was the result of racial bias, but he provides no other facts to support this allegation.

Plaintiff also asserts claims against his attorney Nicholas A. Moschella ("Mr. Moschella") for failing to file a motion to dismiss the indictment against Plaintiff and for taking advantage of Plaintiff's lack of legal knowledge and his lack of proficiency in English.  *See* Complaint at 8.  Plaintiff states that his attorney told him that he had a special relationship with the Judge and the prosecutor in the case, but it is unclear how this affected Plaintiff's case.  *Id.*

The Court construes Plaintiff to assert violations of his constitutional rights pursuant to 42 U.S.C. § 1983 against Officer White, Mr. Moschella, and the Freehold Township Police Department.[1]  To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right.  *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983).

The Court begins with Plaintiff's false arrest and false imprisonment claims against Officer White.  The elements of a false-arrest claim are (1) that an arrest occurred; and (2) that the arrest was made without probable cause.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).  A claim for false imprisonment may be grounded on a "detention pursuant to [an] arrest" made without probable cause.  *See id.* at 636.  Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within [the defendant's] knowledge and of which [he or she] had reasonably trustworthy information were sufficient to warrant a

---

[1] The Court does not construe any state law claims. Even if Plaintiff seeks to bring state law claims, however, the Court would decline to exercise supplemental jurisdiction over any potential state law claims at this time in light of the dismissal of the federal claims.  Plaintiff is free to assert state law claims in his amended complaint, should he choose to file one.

prudent man in believing" that the plaintiff had violated the law.  *Hunter v. Bryant*, 502 U.S.

224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Orsatti v. N.J. State*

*Police*, 71 F.3d 480, 483 (3d Cir. 1995).  As such, the relevant inquiry is not whether the

individual <u>actually committed</u> the crime for which he or she was arrested, but whether the officer

had probable cause to believe so at the time of the arrest.  *See Groman*, 47 F.3d at 634-35. "The

probable cause standard thus provides individuals protection 'against unreasonable searches and

seizures,' U.S. Const. amend. IV, while simultaneously enabling investigating officers to act

quickly—before necessarily obtaining evidence sufficient to prove guilt beyond a reasonable

doubt—to effect an arrest."  *Dempsey v. Bucknell University*, 834 F.3d 457, 467 (3d Cir. 2016).

"[T]he [false arrest] standard does not require that officers correctly resolve conflicting evidence

or that their determinations of credibility, were, in retrospect, accurate."  *Id.* (citing *Wright v.*

*City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005)).  Moreover, "[i]f an officer has probable cause

to believe that an individual has committed even a very minor criminal offense in his presence,

he may, without violating the Fourth Amendment, arrest the offender."  *Atwater v. City of Lago*

*Vista*, 532 U.S. 318, 354 (2001).

      Here, Plaintiff alleges that the Officer White arrested him without probable cause because

he based his decision to arrest Plaintiff on a partial cell phone video and the false statements of

Plaintiff's assailants. Although Plaintiff alleges that he provided the surveillance video to Officer

White <u>after</u> his arrest, Plaintiff does not allege any facts to suggest Officer White any reason to

doubt the accuracy of the cell phone video or the reliability of Plaintiff's assailants at the time

Plaintiff was arrested.  Finally, Plaintiff appears to assert that Officer White should have

obtained the surveillance video prior to arresting Plaintiff; however, he does not assert that the

surveillance video was readily available at the time of Plaintiff's arrest or that Plaintiff attempted

to show Officer White the video, and he refused to view it.  Indeed, it appears that Plaintiff needed to contact his employer to obtain the video.  For all these reasons, Plaintiff has not sufficiently alleged that he was arrested without probable cause.  The Court will therefore dismiss <u>without prejudice</u> the false arrest and false imprisonment claims against Officer White for failure to state a claim for relief.

The Court also construes Plaintiff to assert a malicious prosecution claim against Officer White.  The elements of a malicious prosecution claim are as follows: (1) defendant commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) defendant "initiated the proceeding without probable cause;" (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice; and (5) plaintiff "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007).

Here, it is not clear that Officer White had any role in Plaintiff's prosecution beyond the initial probable cause hearing in municipal court, which occurred prior to Officer White's opportunity to view the surveillance video.  But even assuming that Officer White had a role in continuing Plaintiff's prosecution after he saw the full surveillance video, Plaintiff has not provided any facts to suggest that the proceeding has terminated in his favor, *i.e.*, that the charges against Plaintiff have been dismissed.  As such, Plaintiff does not state a claim for malicious prosecution.  Moreover, the claim is premature and does not accrue until the pending criminal proceedings terminate in his favor.  *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (explaining that "the statute of limitations [on a malicious prosecution claim] begins to accrue

when the termination of criminal proceedings becomes favorable").  For this reason, the malicious prosecution claim is dismissed <u>without prejudice</u> as to Officer White.[2]

Plaintiff also intimates that Officer White's decisions to arrest and prosecute him were motivated by racial bias.  The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.  Equal protection of the law requires that all persons similarly situated should be treated alike.  *City of Cleburne. Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *Artway v. Attorney General of New Jersey*, 81 F.3d 1235, 1267 (3d Cir. 1996).  Plaintiff alleges in a conclusory manner that he was arrested (and prosecuted) because his accusers are white, but he provides no other facts to support his allegations of racial bias against Officer White.[3]  Indeed, he alleges that Officer White also charged the white customers with crimes once he viewed the surveillance video. Without additional factual support, Plaintiff's allegations of racial bias are purely speculative. *See, e.g.*, *Bradley v. Jersey City Police Dept.*, 2013 WL 4606710, at *6 (D.N.J. Aug. 29, 2013)(dismissing without prejudice equal protection claim where the plaintiff "simply theorized, without any factual support, that the[ ] officers might have treated him differently if he were a white male [and] alleged no facts suggesting any discriminatory motive, whatsoever, in the officers' treatment of him").  Because Plaintiff has provided insufficient facts to support an equal

---

[2] To the extent Plaintiff seeks to bring a separate claim against Officer White for presenting false testimony at the probable cause hearing, that claim is likewise dismissed because a trial witness has absolute immunity with respect to any claim based on the witness' testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983).

[3] Plaintiff's race and/or ethnicity is not disclosed in the Complaint, but the Court assumes for purposes of this Memorandum and Order that Plaintiff is non-white.

protection claim or other claim premised on racial bias, the Court will dismiss this claim <u>without prejudice</u>.

Plaintiff has also sued the Freehold Township Police Department, but this entity is not a proper defendant under § 1983.  In § 1983 actions, "police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."  *Padilla v. Township of Cherry Hill*, 110 F. App'x. 272, 278 (3d Cir. 2004).  The Court therefore dismisses the Freehold Township Police Department <u>with prejudice</u>.

Plaintiff may be attempting to allege a claim against the Township of Freehold pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Plaintiff fails to state a claim for relief because he has not provided sufficient facts showing that any individual defendants inflicted constitutional harm.  *See Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.'" (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Moreover, municipal liability under § 1983 may not be asserted under a *respondeat superior* theory of liability but must instead be founded on allegations that the government itself supported a violation of constitutional rights.  *See Monell*, 436 U.S. at 690.  Municipal liability exists where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury.  *Id.* at 694.

Under Third Circuit law, when a plaintiff brings a complaint under *Monell* against a municipality, the specific offending custom, policy, or practice must be pleaded in the complaint.

*See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)).  In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Estate of Roman v. City of Newark*, 914 F.3d 789, 798 ( 3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges.  *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).  At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question.  *See id.*

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline.  To plead a claim based on failure to train (and/or supervise and/or discipline), a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'"  *Estate of Roman,* 914 F.3d at 798-800 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)).  Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[4]

---

[4] In some instances, "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations."  *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *City of Canton, Ohio*, 489 U.S. at 390 n. 10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'"  *Id.* at 223-24 (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

*Id.* at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

Here, the Court has dismissed without prejudice the Fourth and Fourteenth Amendment claims against Officer White, and there are no facts to suggest that a specific policy or custom or a failure to train and/or supervise caused the alleged harms at issue.  As such, the *Monell* claims against the Township of Freehold are also dismissed <u>without prejudice</u>.

Finally, Plaintiff has sued the attorney representing him in his criminal case.  It is well established that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Vermont v. Brillon*, 556 U.S. 81, 91 (2009) ("[T]he relationship between a defendant and the public defender representing him is identical to that existing between any other lawyer and client.  Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor.") (citation and quotation omitted).  Plaintiff alleges that his attorney failed to file a motion to dismiss the indictment against him, which is plainly within the scope of a traditional lawyer's function.  The remaining allegations, including Plaintiff's vague claims that his attorney took advantage of him as a non-English speaker and told him he had a special relationship with the prosecutor and judge, without more, do not transform Plaintiff's criminal attorney into a state actor or a state a claim for relief.  As such, the § 1983 claims against Plaintiff's criminal attorney are dismissed <u>without prejudice</u>.

Having dismissed the Complaint in its entirety, the Court will permit Plaintiff to submit an Amended Complaint.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment,

unless doing so would be inequitable or futile).  Because it is conceivable that Plaintiff can cure the deficiencies in the claims, he may file an Amended Complaint and a request to reopen this matter within 45 days of the date of this Memorandum and Order.[5]

      **IT IS, THEREFORE**, on this 15th day of December 2021,

      **ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (ECF No. 1-1); and it is further

      **ORDERED** that the Complaint shall be filed; and it is further

      **ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Monmouth County Correctional Institute; and it is further

      **ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

      **ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees,

---

[5] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  *Id.*

Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim for relief; and it is further

**ORDERED** that the claims against the Freehold Township Police Department are dismissed **WITH PREJUDICE**; and it is further

**ORDERED** that the remaining claims are dismissed **WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and move to reopen this matter within 45 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Complaint; and it is further

**ORDERED** that if Plaintiff fails to submit an Amended Complaint within 45 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and **CLOSE** this matter accordingly.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge